ncA t and I . Good morning and may it please the court. My name is William Bennett. I'm here with my partner, Lauren Wilgus. We represent the appellants. The December 27, 2018, opinion and subsequent judgment must be vacated. The district court lacked personal jurisdiction and defense, which was never forfeited, and the findings of fact with respect to alter ego just cannot withstand the scrutiny of this court. The district court erred, holding appellants forfeited their personal jurisdiction and defense and not dismissing the case for lack of personal jurisdiction. Jurisdiction over the appellants was predicated on the whole fact that Primera, the judgment debtor, was registered to do business in New York. As of December 2016, when this case was on appeal for the second time, registering to do business and the law surrounding that aspect of the law changed drastically. With respect to forfeiture, the static case is instructive. There was a nine-year delay and the court there said that the waiver by conduct, that there was no waiver by conduct because of the procedural history was damaged. The law changed drastically with Dymar and then in Brown, this court specifically, finding Connecticut's law was no longer good under Dymar, said New York is now an open question. We're not going to decide this today. New York is an open question and we have said that in that situation where there's no longer any contradictory authority that you then have an obligation to raise it and instead you went forward with a bench trial. You went through a whole bench trial without raising a personal jurisdiction issue that this court had told you you have available to you now. So what's your response to that? Because it wasn't available and I think there's a disconnect here. Dymar had nothing to do with registering to do business in jurisdiction in New York. The Beach City Group case, which was- Put aside Dymar. Brown specifically dealt with that issue under Connecticut law and said New York is now an open question in light of Dymar. So why are you saying that we didn't have the ability to go forward at that point? That was the green light that you could raise this now. Instead you went through a bench trial. It wasn't a green light because at that particular time when Brown was decided, they cautioned people in New York saying that the New York registration statute was more robust and the legislature even had rules that they were deciding to clarify personal jurisdiction. Brown was- Green light. Tell me what the green light was. The green light- Armino was- Armino was 2016. Because up until that point, Judge, there was absolutely not a single case in the state court and only one case in the Southern District of New York, which was Chatwall, which said, but there was still a conflict and under Hawknett, I don't have to be clairvoyant. I had a judge- In Tarimino, there was a conflict. Judge Papone in Tarimoni put the cases in a big paragraph on both sides of the question saying courts are split on this. So you're saying a district court opinion somehow is what was necessary for you to move forward. That district court opinion had no binding authority on anybody and you're saying that was what we needed. The district court, there was a conflict in the law that was not settled in Tarimino. What do you mean it's settled by Tarimino? That's a district court opinion. Judge, that decision didn't settle it. All it did was advance the ball one more case on your side, but it didn't settle it. Yes, because following Tarimino, all of the state court cases finally decided that conferring personal jurisdiction registration was no good law. Prior to Tarimino, the New York state courts all held uniformly that registering to do business was personal jurisdiction. Let's assume for the sake of this argument that the Chatwell case was my invitation to come back. That was February, two months before trial. What the district court said was, you forfeited because you should have known during Daimler. When Daimler was decided in- Chatwell was in 2015. The bench trial was in May of 2016. Chatwell was 2015. Yes, I apologize, Your Honor. But at that point, Chatwell is bookended by Beach City Group and the Bonkowski case, and all of the state court cases. That was an outlier. That was an outlier of the case. It wasn't until Tarimino takes all of the cases. Hawke met in 2009 that you forfeit the defense if you fail to raise it despite a decision that might support you, that might support you. It just has to be available. I still don't understand how Brown did not make this available to you, whether you thought the weight of authority was against you. When this court says, this is an open question, you might have a claim, right? Hawke met says, a party cannot be deemed to have waived objections or defenses which were not known to be available at the time they could first have been made. The mere failure to interpose such a defense prior to the announcement of a decision which might support it cannot prevent a litigant from later invoking such a ground. There was a serious conflict in the law. You're arguing that you didn't waive, but personal jurisdiction can be forfeited inadvertently. That is to say, you don't know you're doing it. And here, the matter proceeded for four years. Your Honor, we entered the jurisdiction. For three years, three months, it sat up in this court, went back down with instruction that you need to determine alter ego under U.S. law. Again, when that came down, Premier and the judgment debtor, not appellants, made another motion for lack of subject matter jurisdiction. That took several months to decide. We participated in this proceeding for 13 months. At the May 2015 hearing before Judge Caudill, he said, I don't want to see another 12B motion made by appellants because of Rule 11 sanctions. We're going to trial. Get ready. We went to trial. If you look at the alter ego findings of fact, they do not withstand scrutiny here. Even if you say, Mr. Bennett, you forfeited that right, which we do not concede here, the alter ego, if you look at commingling of funds and ownership, the two biggest badges of alter ego, that there is not a single finding of fact which supports an intermingling of funds between Premier, the judgment debtor, and appellants. There's only a 9% interest between a common shareholder, one shareholder. And that's with several of the appellants, not all the appellants. So with respect to alter ego- Total one through 10 factors, right? After having heard the witnesses and- He didn't believe you're a guy. I mean, where is the clear error? First off, he believed my guy in the first opinion. In his second opinion, he said that Mr. Coronas testified credibly, and that defense, the plaintiff's witness was all over the board. It came back up here for the second time, went back down, and he wrote a decision two and a half years later that was not credible, which was inconsistent with his prior finding. You still have to review those findings of fact for clear error. And under the scrutiny that we give for alter ego cases, it doesn't exist here. Take, for example, intermingling of funds. He has six findings. District Court has six findings. Findings 63, 64, and 65 cite to companies who weren't even part of the litigation. 66 and 69 deal with Primera, who was trading on behalf of JPC. There was no intermingling of funds. And finding 104 doesn't even discuss the appellants. With respect to ownership, he makes 11 findings. And when you boil it all down, the only finding is that there is one shareholder that is from Primera that has a 9% interest in some of the appellants, no interest in prime bulk. If you go to inadequate capitalization, there's five findings. Only none talk about the appellants. Disregard of corporate formalities, none discuss the appellants. It's an overarching finding that the defendants ran and administered all of these companies as a single enterprise. And that's a very hard finding to overturn, especially when there's an adverse credibility finding with respect to your major witness. If you remember that Primera is the judgment debtor, Primera had no control whatsoever over the appellants. The appellants were part of a cross-collateralization facility agreement to build ships. The opinion talks about their relationship, but it doesn't connect it to Primera at all. If you go through those findings of fact, you will have a very difficult time finding how Primera, the judgment debtor, is connected in any way to the appellants other than a 9% interest from one shareholder to the appellants, but not to Primera. That book sets up an issue for your adversary. It does. Thank you, Your Honor. May it please the Court, my name is Thomas Tisdale. I'm with the attorneys for the FLE, D'Amico Dry. Let me first go to the issue of credibility. Judge Codal had eight hours to observe Mr. Corona's testifying in front of him. He had the opportunity to listen, observe, weigh, and measure, and he found his testimony to be not credible. Now, the fact that in 2016 he determined that in one specific instance he testified credibly, insofar as speculating in FFAs, that's all the 2016 decision addresses, not everything else. Insofar as the alter ego findings of fact are concerned, the testimony was in fact all over the map, to use my colleague's term. In fact, Judge Codal gave something in the order of eight different examples where Mr. Corona's testimony was patently incredible, just not credible. Now, the fact that there was two and a half years between these ultimate findings of fact and the trial is not unusual at all in the history of this Court when cases are remanded back to the District Court for further findings of fact. I think the history of the DG Harmony is something in the order of four or five years between the actual trial and further findings of fact. Nothing unusual about that at all. That case was 20 cases, so I don't know. I do remember. The, you know, Anderson v. City of Bessemer leaves the issue of a witness's credibility strictly in the province of the District Court, and Judge Codal found him lacking in credibility. City of Bessemer also addresses the issue of what constitutes clearly erroneous findings of fact. Now, you've not heard any challenges as to the law, and that's correct because there are no challenges as to the law. There are only challenges as to the Court's factual findings, in which case this Court has to determine that it's clearly erroneous. There hasn't been an argument that it is implausible, based upon the entire record, that Judge Codal could find all 19 of these defendants to be alter egos of Primera. He's just said, on this particular issue, I think he's wrong. On this particular issue, I think he's wrong. The fact of the matter is, Judge Codal had all of the specifically on the issues of alter egos, each supported by either testimony or documentary evidence, which is incredibly thorough. The, you know, at the end of the day, he found all 10 factors finding in favor of a holding of alter ego against each and every single enterprise. That's what this was. Paul Koronis and Nick Koronis operated these companies as if they were one. This idea that there's only 9 percent ownership interest in Nick Koronis, we have no evidence of Mr. Koronis' ownership of Primera. None. It was never produced. The only thing we have is the records which were filed in the Greek Mercantile Office, which showed him to be the sole owner of Primera. And that's what Judge Codal relied upon. The interest rate of 8 percent, where does that come from? The interest rate of 8 percent is a matter of English law. Remember now that this case actually started off as a recognition of an English high court judgment. An English high court or an English law post-judgment interest is 8 percent. We prayed for it in the complaint. We've prayed for it throughout in our pleadings. Is there something to establish that in the record? Well, in fact, yes, we have introduced the English Judgment Act, which established it as an 8 percent rate post-judgment during this nine-year period. But that doesn't seem to be the basis on which the 8 percent interest rate was imposed. The judge thought it was in the contract. Your Honor, I respectfully disagree. Judge Codal found that the 8 percent was based upon English law, based upon the Judgment Act. The ability for us to recover legal fees for the further pursuit of this judgment was something that was found in the contract, but it's also found in the English judgment. But it's the legal fees that are in the contract. The interest rate that is included in the FFA master terms relates to pre-judgment interest in England, and that's what the 17... That's the LIBOR plus 2. The LIBOR plus 2. That had strictly to do with pre-judgment interest in England, not post-judgment interest in England, much as the same as we would hold true in this court. So the English judgment is silent on post-judgment interest? Correct. It's just a matter of English law. Under the English Judgment Act, it would be 8 percent? Correct. And the English Judgment Act was introduced into evidence. No questions were raised. Judge Codal had no issue or problem understanding the very simple English law on that point. Your Honor, one of the cases which I think this court should consider is actually NYK Cool v. Ecuadorian Law. And in that particular case, this court affirmed a summary judgment decision in the lower court, wherein it found, like here, all 10 factors favor the finding of alter ego. On summary judgment, the district court entered judgment in favor of the plaintiff, finding that all of the defendants were alter egos of the judgment debtor, just like here. But that was summary judgment. This was a trial. It was a trial where the judge had the opportunity to review all of the evidence, all of the arguments, and weigh the credibility of the witness. Can you address the commingling of funds? Your adversary said that that particular factor was clearly erroneous, the findings. Can you just address that? Certainly, Judge. On the commingling of funds issue, you know, keep in mind that Judge Codal found that he gave examples in his conclusions of law of each of the elements. He didn't say this is it, this is everything. These are some of the examples. When it comes to the intermingling of funds, there was lots of discussion about the Primera under the FFA were being diverted away, sometimes to non-parties to this case, C-Dance being one of them, Primrose being another one. Moreover, he was diverting funds away to a company called JPC Investments, which is, in fact, the company his mother owns, the company he claimed to have no knowledge about. He didn't know who the officers and directors were? Had no idea who they were, but they gave him a million and a half dollar interest-free loan. Further evidence of commingling of funds, Judge, was, in fact, the payment of legal fees in this case. Legal fees being billed to one defendant, one entirely separate, allegedly, group of defendants, being the bulk carrier companies that were being paid by the tanker companies. The intermingling of funds is evidenced throughout in the record in the 168 findings of fact. I take exception when I hear someone say, we have not proven a particular issue on a particular point, when, as Judge Kodal found, documents that should have been produced were never produced, and the witness lies. It's very difficult to establish a particular point when a witness lies throughout that point. Now, in this particular case, Judge Kodal discredited his testimony and did so correctly. NYK Coole is informative for me for a number of reasons, but primarily this, Judge. D'Amico Dry filed this action 10 years ago. We've been before this court three times, twice before your honor. We have, in Judge Kodal's words, had to endure every procedural ploy, meritless motion, inconceivable argument, and effort to avoid payment of the judgment. 10 years. In NYK Coole, this court, with similar arguments, summarily affirmed the decision of the district court three days after the oral argument. And I would ask this court to do the exact same thing. Because if, in fact, justice delayed is justice denied, then justice mandates that this case be summarily affirmed, either remanded for the assessment of legal fees for the defense of this appeal, or this case, court, keep it and assess the fees itself. You have the authority either way, but it must be affirmed. If your honors have no further questions, we rest on our briefs. Thank you. We'll hear the rebuttal. With respect to intermingling of funds, the answer was there was payments made to JPC. That's the only appellant in this matter that allegedly received funds. The particular FFA that's at issue here, it states Primera on behalf of JPC. No diversion of funds. There's absolutely not a single particular finding of fact that shows intermingling of funds. With respect to no production of documents, that's Primera. Primera was represented by Squire, Patton, Boggs. They were in liquidation. They didn't produce documents. Judge Kodal, with respect to my clients, we produced board of directors meetings, shareholder meetings, bank records, and the judge specifically held no spoliation with respect to appellants, because they got in the case late. With respect to attorney's fees, never requested in the complaint, amended complaint, finding of fact, joint pretrial or order at trial. He's not entitled to attorney's fees. With respect to interest, the parties agreed that it would be LIBOR plus 2%, not 8%. And if you want to rely on the law of England, post-judgment interest ceases at six years. You can't have it both ways. Think about what would happen if everyone who has an English judgment would come running to New York because they have an 8% instead of LIBOR plus 2%. Doesn't the Judgment Act 1838 say 8%? Doesn't it say 8%? We're looking at it right now. It says 8%. In this particular case, there was an agreement of 2.5% LIBOR and interest ends after six years. So you raised that for the first time in your reply brief that that had been raised prior to that? Of course I raised it for the first time because it was raised by defendants after trial. They never raised an amended complaint, a joint pretrial order at the trial. They never proved that under the judgment and the FFA that they were entitled to interest or attorney's fees. How could I waive something that was never even raised or pled properly? With respect to alter ego, findings of fact, it cannot withstand the scrutiny. What's happening here is plaintiff says the father's business in 2008 during a financial collapse went under, and I want you to make the son pay for it, and all the other shareholders said nothing to do with Primera. There's absolutely no indicia of alter ego here. The district court complaint cannot withstand the scrutiny of this court. It just simply cannot. All right. Thank you. We'll reserve the decision.